Good morning, Your Honors. My name is Adam Kimmel. I'm here for respondent Ismail Haidar Ahmad and most of his family members. I'm hoping to go directly to what I see as the central question in the case about how the law bearing on mixed motive situations in asylum claims or what some members of the circuit refer to recently as the at-least-in-part rule applies to this case. So this is a key problem here, whether the withdrawal of the Syrian army takes away the risk of future persecution? I don't think so, Your Honor. I mean, I'm happy to talk about that, but I don't think that's the heart of this case. The – in this case, the BIA did mention that as a reason to discount the evidence of past persecution. First, they decided that there wasn't sufficient evidence to constitute past persecution. And then they said even if it is, the Syrian army is left. We're not contesting the past, that there was not evidence that compels the finding of past persecution in the first place. That's a good point. As I understand it, you're not challenging past persecution, correct? That's correct. And you're not challenging withholding or CAT? Correct. So we're really talking only about asylum and future persecution. Exactly right. Fear of future persecution. But the BIA – yes. Let me ask a question, though. If you're not challenging past persecution, but you're saying that there's a fear of persecution in the future. Yes. What additional evidence is there to create a fear of persecution if what happened in the past wasn't sufficient? Well, you're quite right, Your Honor, that the claims revolve around the same nucleus of operating facts. I mean, it's the same events that happened to him. And that does generate his fear for the future. Yes, but you don't have the advantage of presumption. Correct. So your evidentiary burden presumably is higher. Yes, I think that's fair to say as well. There is this regulation presumption. To finish with your question, Judge White, there's a whole series of Ninth Circuit cases which say, particularly dealing with threats, which is what we have mostly here, putting aside some of the trouble that he had in earlier years with the Syrian army, that you could have some kinds of threats which are serious enough, immediate enough, or are conjoined at the same time with contemporaneous events of various kinds, that they themselves constitute past persecution. The impact is so severe, the – or whatever. And then there's – then there are threats that they may stand alone, they're not conjoined to other events at the same time. They don't have the same apparent emotional impact. They're not severe enough to cause past persecution, but nevertheless can constitute grounds for fear of future persecution. And in my brief, I cite a bunch of those cases. Lim, I think, is probably the most famous of the Ninth Circuit case that makes that distinction. And that's what we have in mind here when we say that, although there's no additional evidence, the evidence that is here is sufficient grounds for future persecution. Well, let me – let me ask you a question. Yeah. If you're going to establish future persecution, it's my understanding you have two prongs. Yes. It's an objective prong and an objective prong. Absolutely. Correct? And we – and we, as I understood the I.J., found your petitioner credible. Right. And sincere. And sincere. So at that point, I have to give credit to everything that he says. Yes. Right. And so it's my understanding that he – the I.J. says that the threats are not serious enough for future persecution. Well – And I understand that the BIA says the country conditions changed when the Syrians left and then said that this Hezbollah stuff was personal and didn't have anything to do with Hezbollah, really. Okay. I think the heart of this – the way I see the case is this Hezbollah stuff and whether it's personal or political. So you really think that's where you're going? And that's really what I want to talk about. But I'll just answer – and forgive me for interrupting you. No, no. I think you – you answered my question without asking it. Okay. Bottom line is, if that's where you're going, that's what we want to hear. That's exactly where I'm going. What the BIA – what the – No, they didn't. I think it's a very broad-brush sort of determination. Again, their changed conditions, the Syrians leaving, just go to the question of past persecution. That's the only context in which the BIA talked about it. You know, the – they really have two operative paragraphs in their opinion, and the first one is past persecution, and that's where they talk about it. They don't discuss it in connection with future persecution. The persecution that we're afraid of in the future at this point, these threats from Talal al-Ahmaz and Rabaa – those are not Syrian people. Those are Hezbollah people. But didn't – didn't the IJ suggest that what happened as to the personal situations here and whether they were Hezbollah or not were not future persecution? Didn't the IJ find that? I don't think he did, Your Honor. I don't think he even came close to saying anything like that. Well, I understood that he did and that the BIA affirmed him on that. So where in his decision – He did – he did talk about how because the threats were – there was no apparent follow-up on the threats and because they were – some of the circumstances that they were sort of in passing and they were sort of not explicit. He said – in fact, I thought he kind of said that the petitioner told the government that Talal al-Ahmaz had murdered his own father in 1999, thereafter threatened by Ahmaz, and that the IJ said, well, that's really just personal stuff. Oh, absolutely the judge said it's just personal. And so at that point, when he went to the BIA, the BIA final order says Ahmaz and his cohorts, that's not a political opinion, that's a personal dispute. Absolutely right. Both the IJ and the BIA said it's personal. So you're suggesting that there's not substantial evidence to sustain their position? Yes. That's exactly what I'm saying and that's exactly what I wanted to talk about here. I think that's a different question from whether the threats are severe enough to constitute past persecution. It's whether it's on a – there's a nexus to a protected ground. And I think there's a series of factors that lead precisely to that inevitable conclusion here. The first is that Haidar is – I call him Haidar as opposed to Ahmad – a lifelong politically engaged person. There's evidence throughout. He starts as a community organizer in South Beirut at age 17. He publishes in newspapers. He edits this magazine for the airline for which he works. He's more or less continuously involved. He's questioned many – several times by Syrian people. Now, again, I'm not saying that's Syrian stuff. That's in the past. But that's what they're questioning him about frequently. But doesn't it come down to Talal? Isn't Talal a threat? I think that's exactly right. I mean, that's the most live thing. Let's talk about the threat with Talal. The first and most important thing is that the problems with Talal arise before, a year, year-and-a-half or so before Talal kills Ismael or arguably kills Ismael's best friend, Talal's father. And so Ismael has his first run-in with Talal a year-and-a-half before that. This is when Talal sees Ismael, passes him on the road. Ismael's involved in campaigning in the 1998 elections, which were parliamentary elections. Ismael is supporting an avowedly anti-Hezbollah candidate. And Talal says, we know you're not on our side. We know you're against us. And that's a year-and-a-half before any of this. It's completely independent of anything having to do with the father's murder. What is it that establishes fear of future persecution, well-founded fear of future persecution? Well, there's three different threats from Talal. There's that first threat that I just described in 1998 that takes place, again, a year before this. Then, after the murder of the friend and the father, there's this anonymous letter that Haidar works on complaining about, I mean, not per se accusing, but complaining about Talal's role in the murder. And then Talal passes threats on to Ismael through El-Fajr Had. And there's an affidavit of his. He actually came to Oregon two weeks before our hearing, so we were able to prepare an affidavit. And none of this is discussed by the BIA or even the immigration judge, for that matter. And the third, so that's the second threat that's passed on through him, and it says that he's going to silence anyone who is involved. And then the third one is a year later in this restaurant in Beirut, where Talal sends his bodyguard over to see Ismael. Ismael's having dinner with his daughter there and says, are you around? You know, where are you? And he says, well, I fly back and forth. He's still working for the airline at this point. And Talal's bodyguard says, well, you better stay out of the country. It's a death threat. That's his fear. But all of this stuff is really independent of the episode involving the father's murder. Well, it doesn't. Well, I guess I'm trying to figure out how, on a substantial evidence standard, one can suggest that all of this is independent of the fact that the plaintiff told the government that the guy had murdered his own father. Well, the first off is, again, that the first threat is a year and a half before that happened. Again, I mean, it must be independent of that because it happened a year and a half before that. Secondly, we know that El-Haj, this person who wrote this affidavit, El-Haj, was the brother-in-law of the man who was killed, the father who was killed. And that guy still lives there. Talal has not done anything to him. We have his affidavit. He doesn't like living there. He doesn't like paying 20 percent of his money to Hezbollah. But there's been no retaliation against him. Thank you, counsel.  Your time has expired. Thank you so much. You're welcome, counsel. We'll hear from the government. Good morning again, Your Honors. Jonathan Robbins here on behalf of Eric Holder, the respondent. The key issue in this case is whether or not the petitioner established a well-founded fear of future persecution in Lebanon based on this incident with this individual known as Talal and his association with Hezbollah and whether or not this is on account of political opinion. Are you abandoning your jurisdiction? No, no. The petition is still moot with respect to the past persecution in Syria. Again, it's important not to conflate that the Syrian forces and Hezbollah are two separate entities. Well, I understand that. Right. But then you do agree we have jurisdiction to consider the claim of future persecution, correct? Yes, over the well-founded fear of persecution on account of political opinion with respect to Hezbollah. And I think it's evident when you look at the record that it's interesting. The petitioner starts out with all these different claims of persecution. He's got this claim of persecution in Israel. That falls to the wayside because he's not going back to Israel. He's got this issue with the Syrian forces. The Syrian forces end up withdrawing. And what ends up getting thrown into the limelight is this personal dispute that he has with this person who happens to be a member of Hezbollah. Let me ask you a question, Counselor. I saw in the I.J.'s opinion that he said it's not accurate to say that Syrian influence in Lebanon has ceased simply because the Syrian army has withdrawn. Yes. And then I see where the BIA, really without much individualized application, says the country conditions have changed because the Syrians have withdrawn. Haven't I got to send this back to the BIA to give an individualized analysis of the circumstances for this particular person, given our precedent, because nobody made such an individualized analysis at the BIA level? Well, no, for a number of reasons. First, they've conceded that these events with the Syrian forces didn't rise to the level of past persecution. So whether or not this was- I didn't hear them concede. I didn't read that in their brief, and all I heard him say, he really wanted to get after this other one because he thought that was his strongest argument this morning. No, it's in his brief. If you'll just allow me to turn to the page. Just bear with me for one moment, Your Honor. The Haidars do not challenge the finding of no past persecution. Well, but we're not at past persecution. We're at future persecution. Correct. And future persecution, they're suggesting that they have future persecution from the Syrians. They have future persecution from the Hezbollah. They have future persecution from both sides. And the IJ says, well, I'm not sure that that's really the case, but I can't really say the Syrian influence in Lebanon has ceased. And then the BIA, without even any analysis as to this particular individual's circumstances in this particular country, because the Syrians have left, simply says the Syrians have left and therefore not a problem. Well, haven't I got to send that then back on future persecution to the BIA to say why we need an in – what is the individual analysis as to this particular person, given that the Syrians have left? Well, they – I mean, I'm pretty stuck on procedure, but that's the only way I know how to deal with these cases. You have – if you're going to go fast first on future persecution, and he alleges future persecution because the Syrian army leaves, and he alleges future persecution because of Hezbollah, and the IJ says, well, I don't think there really is, but I can't undo the fact that there may be some. And then the BIA just says, well, country conditions, and that's the way it is. Don't I really need the BIA to focus in on whether he really is subject to future persecution, even though the Syrian army has left? Well, it's not – he didn't – when he made his claim for – that he was persecuted because of the – from the Syrians, he didn't really make a claim of well-founded fear. He didn't present any evidence to show that he was facing a future fear. His entire claim was based on his showing of past persecution. I suppose your argument is that he does not have the advantage of the presumption, since he has conceded, as you say, in his brief. Correct. And I think that's what Mr. Kimmel said here earlier. The burden still rests with the petitioner to establish future persecution, does it not? It does. Again, even without a showing of changed country conditions, if you're not entitled to the presumption, you would still have to meet your burden of establishing eligibility for asylum, withholding of removal, and CAT. And for – with respect to the asylum on the Syrian claim, the only evidence he submitted at all to support his claim was this evidence of past persecution, which ended up not actually rising to the level of persecution. And what did the ALJ do with that evidence? I think that's part of the problem here. The BIA ruling was rather cryptic and sort of in one sentence referenced changed country conditions and didn't seem to connect it up. Well, my worry is, and I think this goes to my colleague's question, there are several references in the IJ record as to what the Syrians did and whether that could give him a well-founded fear of future persecution. Well, I would say that – I mean, it is a little bit cryptic, but when the board specifically – again, they didn't present any evidence. I mean, it may be cryptic as to whether or not – I think the IJ was talking about the Syrian forces and saying just because they started to pull out doesn't mean that there's no Syrian influence there. But, again, if – Well, that's a ruling in favor of the petitioner then. Well, no, it's not, because you still have to demonstrate that you would have a well-founded fear of persecution. And even though the immigration judge is indicating that there still may be some Syrian influence there, if you haven't demonstrated any evidence to say that you're going to face a well-founded fear of future persecution there, then – But did the ALJ say that? With the – That's the problem. I think, frankly, there was some loose language in the ALJ's order that gives rise to these concerns. I mean, my worry is, do the allegations that were presented to the ALJ arise to a future persecution, which I can't find the ALJ really talking about, other than to say, well, a lot of that has to do with Syria, and now I really can't say that Syrian influence has ceased, so I just don't know. Then, when we get to the BIA, all we talk about is changed country conditions. See, I'm looking at page 47 of the record. The ALJ says, in some regard, there's some accuracy, and that the Court will also find finding there has been a material change. But then serial influence in Lebanon, it would be not accurate to say that it has ceased. Background evidence also says the Hezbollah has now risen in prominence. If the respondents – it's the ALJ's opinion that they represent the same faction as the Syrian army. That's a finding in favor of the applicant, the petitioner here, is it not? That there's some reason to believe that there could be some future persecution? Well, it's a factual finding to say – but it's a factual finding that there is some Syrian influence there. But, again, this is in the credibility determination when he's making factual findings upon which he's going to base an analysis. But then – Well, then what is your best argument in favor of an explicit finding that there is insufficient evidence of future persecution? Well, I guess the best would be the Board's determination that country conditions had changed later on, which was – Which wasn't even referred to in the ALJ's report. Right. I mean, admittedly, it's not clear. So, with respect to the incident involving future persecution on account of Hezbollah, I think it should be relatively evident that the record doesn't compel a conclusion that he's facing persecution on account of his political opinion. This incident – Maybe your best argument is that the Talal fear is all based on personal vendetta, not political opinion. Yes, Your Honor. It's – In fact, the Board specifically said that this is not on account of political opinion. It's on account of personal vendetta, and certainly the facts bear that out. The incident – the problem that he has with Talal relates to his stirring, arousing suspicion by submitting an anonymous letter with respect to Talal and the alleged murder of his father. And both the immigration judge and Board were very clear on that point, that this was not on account of political opinion and only a personal dispute. Okay. I think we understand both arguments. Anything further, counsel? No, nothing further. Thank you for your time, Your Honor. Thank you very much. The case just argued will be submitted for decision.
judges: Whyte, O'scannlain, Smith M.